DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

|  |  |  |
|---|---|---|
| THE BANK OF NOVA SCOTIA | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 2003-106 |
| HILROY S. FRANCIS, SHARELLE S. FRANCIS and WOERNER DISTRIBUTORS d/b/a H&W DISTRIBUTORS, INC. | ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPORT AND RECOMMENDATION**

This case raises issues concerning the ethical implications of concurrent representation of adverse parties in litigation by different members of the same law firm. Because the resolution of such issues is highly fact-dependent, a rather extensive recitation of the relevant history of this matter is in order.

Plaintiff Bank of Nova Scotia ("Scotiabank") commenced this debt and foreclosure action on June 12, 2003, against the debtor-defendants Hilroy S. Francis and Sharelle S. Francis (collectively, the "Borrowers"). On May 19, 2004, after defaults had been entered against the Borrowers (Docket No. 10), Scotiabank moved for the entry of default judgment (Docket No. 11).

Subsequent to the initiation of the action, on March 22, 2004, Woerner Distributors d/b/a H&W Distributors, Inc. ("H&W") recorded a judgment lien against the subject property. Accordingly, on December 14, 2005, Scotiabank amended its complaint (Docket No. 12) to name junior lienholder H&W as a defendant as required under Virgin Islands law. Scotiabank

*Bank of Nova Scotia v. Francis*
Civil No. 2003-106
Report and Recommendation
Page 2

caused the First Amended Complaint to be personally served on the Borrowers, as well as on H&W.

On April 12, 2006, H&W answered the First Amended Complaint, through the same law firm that was representing Scotiabank, and filed a cross-claim against the Borrowers (Docket No. 18) for money owed to it. In its filing H&W acknowledged the superiority of Scotiabank's lien. On April 21, 2006, Sharelle Francis also responded to the First Amended Complaint, asserting that she had previously transferred any interest she might have in the subject property to Hilroy Francis by quitclaim deed, and that she was only a "secondary signatory" on the Scotiabank mortgage (Docket No. 19, page 2, ¶¶ 4-5). She denied knowledge of the basis of H&W's lien. *Id.* at page 1, ¶4.

On February 23, 2007, H&W agreed to enter into a Confession of Judgment with Scotiabank (the "H&W-Scotiabank Judgment"). The H&W-Scotiabank Judgment acknowledged the priority of Scotiabank's lien over that of H&W, and provided that in the event of foreclosure and sale, the debt to Scotiabank would be satisfied first from the proceeds of any sale, after which the debt owed to H&W would be satisfied from any remaining proceeds (Docket No. 24). On March 29, 2007, Sharelle Francis agreed to a consent judgment with Scotiabank.

Hilroy Francis did not answer or otherwise appear in this matter after service on him of the First Amended Complaint. On May 10, 2007, the Clerk of Court again entered a default against Hilroy Francis (Docket No. 26).

On June 27, 2007, the then Magistrate Judge approved the H&W-Scotiabank Judgment, the consent judgment with Sharelle Francis, and a default judgment against Hilroy

*Bank of Nova Scotia v. Francis*
Civil No. 2003-106
Report and Recommendation
Page 3

Francis (the "First Default Judgment") (ECF 30, 31, 32).  Following a Marshal's Sale on July 1, 2010, at which Scotiabank was the prevailing bidder, on July 21, 2010, Scotiabank moved to confirm the sale (ECF 38).  On March 31, 2011, the District Court denied the motion to confirm (ECF 40).

On July 26, 2011, the District Court vacated the First Default Judgment, finding that it exceeded the Magistrate Judge's authority to enter such a judgment.  The District Court also found that it exceeded the Magistrate Judge's authority to approve the consent judgments, but then itself reviewed and approved both of them (ECF 42).  After an evidentiary proceeding on September 2, 2011, on December 16, 2011, the Court granted default judgment in favor of Scotiabank and against Hilroy Francis (ECF 48).  Scotiabank again moved to confirm the sale that had taken place in July 2010 (ECF 49).

The District Court subsequently observed that counsel for plaintiff Scotiabank--Matthew J. Duensing ("Duensing")--and counsel for defendant H&W--Richard H. Dollison ("Dollison")--are both partners in the law firm of Duensing, Casner, Dollison & Fitzimmons ("DCDF"). Thereafter, on February 23, 2012, the District Court ordered Scotiabank and H&W to submit briefs addressing whether there was a conflict of interest in such representation and what effect, if any, it might have on this litigation.  In response, Scotiabank and H&W submitted briefs, affidavits of counsel, and waivers that had been executed by Scotiabank and H&W in 2006 of any potential conflict of interest arising from Duensing and Dollison being partners in the same law firm.[1]

---

[1] *See* ECF 54-1, at ¶ 5 (Affidavit of Richard H. Dollison, Esq.); ECF 55-1 (Multiple Representation Agreement).

*Bank of Nova Scotia v. Francis*
Civil No. 2003-106
Report and Recommendation
Page 4

On March 29, 2012, the District Court held a hearing on the issue of whether the H&W-Scotiabank Judgment should be vacated. Counsel for H&W and for Scotiabank argued that, under Federal Rule of Civil Procedure 60, the Court should not vacate the H&W-Scotiabank Judgment because (1) there was no prejudice to any party arising from the common representation by the DCDF firm, (2) the Court was aware of the common representation at all times, and (3) it is a final judgment. The Court then ordered further briefing on the latter issue, which has now been completed. The matter was thereafter referred to the undersigned for a report and recommendation.

A. **Conflicts of Interest**

Local Rule of Civil Procedure 83.2(a)(1) provides that the Model Rules of Professional Conduct of the American Bar Association govern the conduct of the members of the bar of this Court. American Bar Association Model Rule of Professional Conduct 1.7 ("Rule 1.7") provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . .
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> . . .

>   (3)   the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal . . . .

ABA Model R. Prof'l Conduct 1.7(a).

**B.   Vacatur of Final Judgments**

Federal Rule of Civil Procedure 60 permits a court to "set aside a judgment for fraud on the court" at any time.   Fed. R. Civ. P. 60(d)(3).   The term "fraud on the court" is not defined, either in Rule 60 or elsewhere in the federal rules.   The definition most commonly offered by courts is that it "consists of acts that 'defile the court.'" *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (citing *Drobny v. Commissioner*, 113 F.3d 670, 677-78 (7th Cir. 1997); *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003); *Harbold v. Commissioner*, 51 F.3d 618 (6th Cir. 1995); *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972); 12 MOORE'S FEDERAL PRACTICE § 60.21[4], p. 56-60 & n.20 (3d ed. 2011)). Some courts have elaborated that fraud upon the court is "'that species of fraud which does, or attempts to, defile the court itself, or is fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases . . . .'" *Drobny*, 113 F.3d at 677-78 (quoting *Kenner v. Commissioner*, 387 F.2d 689, 691 (7th Cir. 1968); it must be demonstrated that the fraudulent conduct affected the outcome of the case).

**ANALYSIS**

**A.   Conflicts of Interest**

Counsel for H&W and Scotiabank argue that there was no conflict of interest here, as these sophisticated corporate entities did not dispute any issue of law or fact and both waived any potential conflict.

*Bank of Nova Scotia v. Francis*
Civil No. 2003-106
Report and Recommendation
Page 6

The comments to the ABA Model Rules of Professional Conduct elaborate on the proscription contained in Rule 1.7(b)(3):

> Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. *Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding.*

ABA Model R. Prof'l Conduct 1.7 cmt. 17 (emphasis added).[2] *See also id.* at cmt. 23 ("Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent.")

Here, the parties were arranged on opposing sides pursuant to Title 28, Section 532 of the Virgin Islands Code ("Section 532"). Section 532 requires, in an action for debt and foreclosure, that "[a]ny person having a lien subsequent to the plaintiff upon the same property . . . shall be made a defendant in the action." V.I. CODE ANN. tit. 28, § 532. In *Nunez v. Lovell*, Civil No. 2005-7 (CVG), 2008 U.S. Dist. LEXIS 77902 (D.V.I. Oct. 3, 2008), the Court addressed whether an attorney may simultaneously represent senior and junior lienholders when they are on opposing sides of the same litigation pursuant to Section 532, and concluded that an attorney may not do so. The facts of this case are strikingly similar to those of *Nunez*. Although it is not the same attorney representing multiple parties, the same law firm represents the plaintiff and one of the defendants. Neither Scotiabank nor H&W has

---

[2] The emphasized language in the comment suggests the drafters believe the Court should take an approach to the Rule 1.7(b)(3) analysis that does not merely look at on which side of the "vs." in a case caption the parties appear. Thus, in a case where a party by rule or statute is to be named as a defendant, though its interests align with a plaintiff, common representation may not violate the proscription of Rule 1.7(b)(3).

presented any reason why the Court should deviate from the conclusion in *Nunez* that such representation violates Rule 1.7.

Having said that, however, the Court must now determine the appropriate remedy for the ethical breach. The parties here argue that there is no evidence of prejudice to either Scotiabank or H&W – or to any other party – as a result of the simultaneous representation by DCDF. They claim that the outcome of the foreclosure proceedings would have been the same no matter who represented H&W, because that entity did not challenge the priority of Scotiabank's lien.[3] That position begs the question, though, because independent counsel conceivably could have advised that such a challenge be made. However unlikely that might have been, given that Scotiabank's seemingly valid mortgage was of record well before H&W even became a junior lienholder, the current record simply does not permit this Court to make an independent evaluation as to whether such a challenge may have been available.[4]

In *Nunez,* the Court found that, even in the absence of evidence of prejudice to either client, the common representation required disqualification there "'as a vindication of the integrity of the bar.'" 2008 U.S. Dist. LEXIS 77902, at *19 (quoting *IBM Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978)). That may well be the appropriate remedy here also, so that independent counsel can advise each party going forward.[5] *See IBM Corp. v. Levin*, 579 F.2d

---

[3] Moreover, the principal debtor, Hilroy Francis, never appeared in the matter to contest foreclosure, and the other debtor consented to a foreclosure judgment being entered.

[4] The hypothetical existence of this potential "challenge" also must be measured against counsel's obligations under Federal Rule of Civil Procedure 11. Again, there is no record from which such an analysis could be made.

[5] In *Nunez,* new counsel had appeared for plaintiff once the issue of conflict had been raised. But, even though the Court suspected that new counsel for the plaintiff and counsel for the junior lien holder were collaborating on their efforts to avoid disqualification (*see* 2008 U.S. Dist. LEXIS 77902, at *19 n. 11 and *20), the Court only disqualified the original counsel, and not both.

271, 279 (3d Cir. 1978) ("it would ordinarily be error for the court to fail to declare the disqualification" of attorneys where the facts establish a violation that disqualifies them under the ethical rules).

Whether the prior judgments ought to be vacated is another matter. Duensing and Dollison argue that because this case was initiated before this Court's decision in *Nunez*, their dual representation could not rise to the level of fraudulent conduct necessary for this court to *sua sponte* vacate the H&W-Scotiabank Judgment or the other judgments. This Court agrees, but for a different reason. Unquestionably, the fraud on the court that justifies vacating a prior judgment must be very serious fraud indeed. Examples of such fraud involve particularly egregious conduct: the bribery of a judge or exerting other undue influence on a judge; jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured. *See, e.g., Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc.*, 127 F.3d 574, 578 (7th Cir. 1997); *Balta Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642–43 (D.C. Cir. 1996); *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985); *Root Refining Co. v. Universal Oil Prods. Co.*, 169 F.2d 514, 534–35 (3d Cir. 1948). Here, not only is there no suggestion that counsel engaged in those kinds of acts, but DCDF made no effort to conceal the dual representation from the Court. The circumstances of this case simply do not present a compelling case for finding that fraud was perpetrated on the court.

Moreover, the party that would most be injured by vacating the judgments, some two years after the ensuing foreclosure sale took place, is the most blameless of all: Scotiabank. It is hard to conceive of any other action that Scotiabank would or could have taken in this

*Bank of Nova Scotia v. Francis*
Civil No. 2003-106
Report and Recommendation
Page 9

litigation to collect on its debt had non-conflicted counsel been involved. In the end, Scotiabank received virtually all that it had sought in the litigation, and equity and fairness do not presently suggest that the result should be undone at this point.

Furthermore, the Court is unaware of any instance in which a court vacated a consent judgment due to a conflict of interest. Courts have responded to conflicts of interest in various ways. *See*, *e.g.*, *IBM Corp. v. Levin*, 579 F.2d 271, 279, 283 (3d Cir. 1978)(upholding a firm's disqualification but also affirming an order allowing consultation with and turnover of work product to new counsel, noting "the court has a wide discretion in framing its sanctions so as to be just and fair to all parties involved"); *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir. 1984)(ordering a new trial where prejudice from the conflict was apparent); *In re World Trade Ctr. Disaster Site Litig.*, 769 F. Supp. 2d 650 (S.D.N.Y. 2011) (suggesting settlement agreement might have to be vacated if certain plaintiffs represented by conflicted counsel were to be included in it, and appointing, at the expense of the conflicted counsel, a special counsel to advise the affected plaintiffs); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455-56 (S.D.N.Y. 2000)(where disqualification would prejudice the conflicted counsel's clients and there was "no real risk of tainting the trial," the court declined to disqualify, noting the "proper place for this controversy is in the appropriate professional disciplinary body"); *Agway, Inc. v. Wells Fargo Financial Leasing, Inc.,* 2005 Bankr. LEXIS 2945, *18 (N.D.N.Y. Dec. 9, 2005)(where the court's ability to reach a "fair and just result" is not impaired, the remedy for the "alleged unethical conduct" should be sought from the appropriate disciplinary body);

*Jedwabny v. Philadelphia Transp. Co.*, 1957 Pa. LEXIS 284, 390 Pa. 231 (Pa. 1957)(affirming the grant of a new trial where counsel had represented parties on both sides of a dispute).[6]

Applying the forgoing discussion to the instant matter, and recognizing that each instance of alleged ethical misconduct must be viewed in light of its own peculiar facts, the Court is of the view that while disqualification may be appropriate, there occurred no fraud in the proceedings that suggests vacating all prior judgments should also follow. Also, as in *Nunez*, the interest of the Court in upholding the integrity of the bar may be most fairly accomplished by relieving DCDF of any further role on H&W's behalf, but leaving Scotiabank's representation intact. If independent counsel for H&W determines it is in H&W's interest to pursue further action with respect to the judgments, the Court may allow H&W to do so. Further, the appropriate professional responsibility authority may consider whether any disciplinary action should be taken against the attorneys as a result of the violation of Rule 1.7.

Accordingly, the premises considered, it is hereby respectfully recommended as follows:

1. That Richard H. Dollison, Esq., be **RELIEVED** of his representation of H&W in this matter;

2. That the law firm of Duesning, Casner, Dollison & Fitzimmons be **DISQUALIFIED** from representing H&W in this matter;

3. That counsel be ordered to inform Scotiabank and H&W of this Order;

---

[6] This conflicts case is often cited for its recognition of "[t]he ancient rule against one's attempting to serve two masters." 1957 Pa. LEXIS 284, at *6. Although the Pennsylvania Supreme Court affirmed the grant of a new trial, a dissenting justice excoriated the "learned trial Judge" for ordering a new trial as "an incredible indulgence of a despotic whimsicality" where the parties affected by the conflict did not want to retry the case. *Id.* at *10-12, 16, 19 (Musmanno, J. dissenting) ("The trial Judge's magnanimity accomplishes the startling paradox that it injures the person it is intended to help and confers a boon on the party in the lawsuit that has no right to be helped, that is, the railway company. . . He offers legal reasoning, which ignores equity and fairness.").

4. That H&W shall, not later than 30 days from the date of this order, retain new counsel; and

5. That any party shall have 60 days from the date hereof to seek to vacate the prior judgments of this Court on the basis of the ethical violation found.


Dated:                                              S_____
                                                    Ruth Miller
                                                    U.S. Magistrate Judge


Any objections to this Report and Recommendation must be filed in writing within 14 days of receipt of this notice.  Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge.   28 U.S.C. Section 636(b)(1)(B); LRCi 72.3.